[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The plaintiff and defendant, whose maiden name was Rice, but whose former married name was Harris, intermarried at Taftville, Connecticut on July 31, 1993; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there was one minor child, issue of the marriage, Stacie C. Forshaw, born December 16, 1993; that said minor child died May 5, 1995; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably and that there is no hope of reconciliation.
This is the second marriage of each party.
The parties first met in the latter part of 1992 and lived together prior to their marriage on July 31, 1993. From the beginning of their relationship to its conclusion, the parties argued and did not get along.
Without going into the specifics, it is apparent that the parties troubled relationship did not improve. They separated in November 1994 when plaintiff told defendant to CT Page 12105 leave after discovering that the defendant had made his former wife, Christine, the contingent beneficiary on a $100,000 life insurance policy. Although defendant and plaintiff reconciled in December 1994, the reconciliation was of short duration.
A final attempt at reconciliation was made in May 1995, after their minor child, Stacie, died, but again, it was unsuccessful, and the marriage was irretrievably broken down.
The court finds that the destruction of the marriage was caused by the attitude of the defendant towards the plaintiff. Defendant drank a good deal, was abusive to the plaintiff, though not physically, threatened her, left her without automobile transportation on occasion, called the state police to report that plaintiff took defendant's unregistered Subaru automobile and was operating it, and threatened her while in the Hartford Hospital when visiting the minor child, Stacie, who was hospitalized.
Before the marriage, the plaintiff worked as a bartender. During the marriage, plaintiff was earning over $16,000 annually as a slot attendant at Foxwood Casino, Ledyard, Connecticut. She presently earns about $25,000 annually as a secretary in the Mashantucket Pequot Utilities. Her net weekly income from her employment is approximately $361. Plaintiff is also the sole owner of a two-family residence in Lisbon, Connecticut, which provides her with a weekly net rental of $105.50. Therefore, her total net weekly income is approximately $466.50.
Plaintiff, who was born July 29, 1957, is in good health. She attended one year of college. Her employability is good.
The defendant is a contractor who does home remodeling. Although defendant had some jobs, his income from his business was meager. His financial contribution to the family was negligible.
Prior to defendant leaving the home in November 1994, he had started renovations to the plaintiff's real estate consisting of insulation and siding. As a result of plaintiff's request during November 1994, that defendant leave, he discontinued the renovations. Despite plaintiff's request that the defendant complete the renovations, he did not. CT Page 12106
As a result of the condition of the property resulting from the uncompleted renovations, plaintiff had to engage a contractor to eliminate bees which had infiltrated the home and to complete the renovations, which reasonably cost plaintiff $7,500.
The death of the minor child, Stacie, necessitated a cemetery plot costing $1,950 and funeral expenses of $3,040. These sums were paid by defendant's mother.
Plaintiff designed a headstone for Stacie and gave it to the defendant so that he could get cost estimates of a headstone. However, the defendant never informed the plaintiff of the cost estimates he obtained, if any.
Defendant claims he arranged with a person in Canada to prepare a headstone with plaintiff's design at a cost of $8,000 to $10,000. Although defendant did not present any written indication of any such arrangement, he requests that plaintiff contribute 50 percent of the cost of the headstone. He also wants plaintiff to pay for one half of the cost of the funeral and cemetery plot.
Plaintiff refuses to pay for the headstone as she had no part in determining the size, type and cost of the headstone. If the cost was reasonable, she would be willing to pay her share.
From March 1995 to the present, defendant has increased his indebtedness from $6,825 to $45,968.79 by cash advances from his credit cards. After Stacie's death, defendant lost $10,000 at Foxwood Casino within a two-week period. Further, defendant, who was renting his deceased aunt's furnished home after he left plaintiff's premises, spent $8,000 on new furniture.
As indicated above, the court finds the defendant to be most at fault for the breakdown of this marriage. A decree dissolving the marriage of the parties is ordered. After considering the factors in Connecticut General Statutes § 46b-81
and § 46b-82, the following orders are entered which the court finds to be fair and equitable.
(1) The defendant shall pay to the plaintiff the sum CT Page 12107 of $7,500 as reimbursement for the cost of completing the renovations to her residence plus the sum of $1,123.50, one-half of the Dime Savings account.
(2) Plaintiff and defendant shall be equally responsible for the unreimbursed medical bills resulting from Stacie's medical treatment and hospitalization.
(3) Plaintiff and defendant shall each pay for one half of the cost of a headstone for Stacie to a maximum of $2,500 provided plaintiff has some input into the type of headstone to be purchased and its cost.
(4) The defendant shall pay to the plaintiff one dollar per year alimony until her death or until such time as defendant pays the sums of $7,500 and $1,123.50 to the plaintiff, his share of the aforesaid unreimbursed medical and hospital expenses, and the cost of Stacie's headstone, whichever is the first to occur.
The defendant shall indemnify and hold the plaintiff harmless from his share of said medical and hospital expense, and the cost of Stacie's headstone.
Said alimony shall be modifiable only in the event the defendant fails to make any of the aforesaid payments or does not fulfilll [fulfill] his obligation to indemnify or hold the plaintiff harmless with respect to said medical and hospital expenses, Stacie's headstone.
The court concludes that the alimony and indemnification orders are necessary to provide for plaintiff to maintain her home and for her continued support. Therefore, defendant's obligations herein are not to be subject to or affected by any bankruptcy discharge defendant may seek.
(5) The defendant shall be permitted, if accompanied by his attorney, a police officer or third person approved by the plaintiff, to enter upon the plaintiff's premises to remove defendant's antique tools and any other tools, siding, and personal property of his located thereon.
(6) The plaintiff shall keep as her automobile the 1989 Plymouth Voyager. CT Page 12108
(7) Each shall pay their own debts as listed on their respective financial affidavits and not otherwise disposed of above.
(8) The plaintiff's former married name, Harris, is restored to her.
Paul M. Vasington State Trial Referee